SINCLAIR REFINING COMPANY *v.* PILES.

4-8791                                      221 S. W. 2d 12

Opinion delivered June 6, 1949.

*Sloan Blair, Paul E. Gutensohn* and *Warner & Warner,* for appellant.

*Bates, Poe & Bates,* for appellee.

HOLT, J.  Appellee, Erma Lee Piles, a minor, by her mother, sued appellant, Sinclair Refining Company, and Jim Audas to compensate personal injuries alleged to have been sustained by appellant's negligence when Erma's mother, Mrs. Young, attempted to light a fire in a heating stove by using what was thought to be kerosene, and a violent explosion occurred.

The defendants below answered separately with general denials and appellant here, Sinclair, specifically denied liability on the grounds that appellee and her mother were guilty of contributory negligence which would bar recovery and that it was not responsible for the acts of the persons who caused the explosion.

When the cause came on for trial, a non-suit was taken as to Audas. The trial jury awarded appellee $2,500 damages against appellant, Sinclair. This appeal followed.

Appellee, a minor, lived with her mother at Hon, Arkansas. In the early morning of February 25, 1947, Mr. Young, her step-father, brought to the home four gallons of a liquid purchased as kerosene from Claud Stewart's store, a short distance away. Mrs. Young, after placing a small quantity of this liquid in a glass, poured it over some wood in a cold wood stove, applied a match, and an explosion immediately followed, severely burning and injuring appellee, who was standing near making candy on an oil stove.

Appellant, in January and early February, 1947, bought two tank cars of kerosene from Atlas Refining Company, a manufacturer and refiner of petroleum products, in Shreveport, La. The cars were shipped to appellant at Waldron, Arkansas, and there received by its agent, Harris, who was, by the terms of a written agreement, in charge of its storage tanks and bulk sales station there. An employee of Harris, Jim Audas, removed the liquid from the tank cars to the storage tanks of Sinclair.

Under the terms of the elaborate and lengthy agreement, Harris assumed charge of appellant's storage tanks and property and made sales and deliveries of appellant's kerosene and gasoline on a commission basis. These products at all times, until sold and delivered, and also tanks and oil containers, were the property of Sinclair. Section 24 of the agreement provides: "Either party may terminate this agreement at any time with or without cause; and upon the termination thereof the Agent shall forthwith deliver to the Company or its rep-

resentatives all equipment, property, products, monies, credits, books of account, and station records of whatsoever form entrusted to Agent or coming under Agent's control.''

Throughout the agreement, Harris is referred to as Sinclair's agent, and the agreement is signed by him as Agent. Harris was given an exclusive territory. The proceeds from all sales were the property of Sinclair, duplicate sales slips or forms were furnished by Sinclair for its agent's use in making sales and deliveries, all proceeds collected from sales were deposited to Sinclair's credit in the Bank of Waldron and its agent, Harris, was paid his commissions every two weeks. All checks received by Harris or Audas were made payable to Sinclair. The name of Sinclair Refining Company was on Harris' truck. The duties of its agent, Harris, required him to take proper care of appellant's products, storage tanks, warehouse, and other equipment as well as to solicit, carry on appellant's business at its direction, make deliveries, collect accounts and make reports as indicated. The authority of agent, Harris, to extend credit to customers was controlled by appellant. Appellant furnished all forms used in the business. Sinclair furnished all containers for its kerosene and gasoline. Harris furnished his own truck and a driver, Audas, whom he paid, to make deliveries. Sinclair required Harris to furnish to it the name of his designated agent, Audas, and under the agreement, Harris could only make a change by giving written notice to Sinclair. Sinclair fixed the prices on its products.

Prior to the morning when the explosion occurred and injured appellee, Harris' driver, Audas, delivered thirty gallons of what was thought to be kerosene to a store keeper, Claud Stewart, which Stewart placed in a metal container furnished by Sinclair with its name printed on it. Stewart had an agreement with Sinclair to sell its products which were to be delivered to him through its agent, Harris. Appellee's step-father, Young, purchased four gallons of the liquid taken from this tank, thought to be kerosene, and sold to him as such,

carried it to his home, and, as noted, the explosion occurred when Mrs. Young poured a small amount of the liquid from the four gallon can over wood in a cold heating stove and applied a lighted match.

There was evidence that this liquid sold as kerosene was tested and shown to contain 15% gasoline and that any liquid containing as much as ½ of 1% gasoline is unsafe for use as kerosene. There was evidence that a sample of kerosene taken from one of the cars in question flashed at 136° Fahrenheit and that from the other car at 134°. Our statute (Ark. Stat. (1947), § 53-604) requires that "no oils or fluids—which ignite or burn (Called Fire Test) at any temperature less than 140 degrees Fahrenheit—shall be offered for sale or used for illuminating or heating purposes within the State, etc."

It is also required that "when any person, firm or corporation shall receive within this State any of the petroleum oils mentioned in this act for the different purposes mentioned in this act, he shall at once notify the Commissioner of Revenues, or one of his deputies or inspectors, of the quantity of said oils received, and request the inspection of same." (Ark. Stat. (1947), § 53-608). There was evidence that appellant received the two tank cars of kerosene in this State and failed to notify the Commissioner of Revenue, or to comply with the statute.

We do not attempt to detail the testimony. The record is voluminous. It suffices to say that after a careful review of the evidence, we have concluded that the relationship between appellant, Sinclair, and Harris was that of principal and agent and that in the circumstances Harris was not an independent contractor and Audas his servant.

As we read the agreement between Sinclair and Harris, and interpret it in the light of the actions and conduct of the parties to it, we think that it was the purpose of Sinclair to retain complete control of all that was done in connection with the sale and delivery of its kerosene, gasoline and products, and that when we give to

the testimony its strongest aspect in favor of appellee, as we must, it warranted a finding that Harris and Audas, Harris' driver, were servants of the company and under its control and supervision.

The agreement, in addition to providing that agent, Harris, should furnish his own truck, provided that he should furnish (subject to appellant's approval) and pay out of his own funds a driver, and be responsible for, and hold appellant blameless for, any negligent acts of such driver (Audas here). Appellant contends that for this court to hold, in the circumstances, that Harris was not an independent contractor and Audas his servant for whose acts Harris would be responsible, would be contrary to our holding in *Magnolia Petroleum Company* v. *Griych,* 206 Ark. 352, 176 S. W. 2d 435. We cannot agree. That case is distinguishable on the facts. While the written agreement in that case was similar to that in the instant case, such agreement would not altogether control the relationship between the parties. Their acts and conduct, and what they did under the agreement may be taken into account in determining that relationship. Here, there is evidence (absent in the Griych case) that would warrant an inference that Sinclair intended or consented that Audas (as well as Harris) was to be its servant or agent, when the agreement is interpreted in the light of appellant's conduct, supervision and control over Harris and Audas.

The principles of law announced in *Magnolia Petroleum Co.* v. *Johnson,* 149 Ark. 553, 233 S. W. 680, a case in which the facts are strikingly similar, in effect, to the instant case, apply with equal force here. There this court said: "The insistence is that the undisputed evidence shows that Smith was an independent contractor, and that the drivers of the wagons were the servants of Smith.

"The majority of the court are of the opinion that the facts stated made a case for the jury, and that the contract between the company and Smith created the relation of principal and agent, and that the company had reserved the right to control and direct the manner

of making deliveries of oil, and that, while no directions were given in the particular instance as to the manner of delivering the oil to appellee, which caused the fire that destroyed the barn, the company had reserved the right of direction; and, in the discharge of all duties, whether performed by Smith himself or by men employed by him, in selling and delivering the oil, the work done was that of the company.

"We recognize, of course, that the designation of Smith as 'agent' in the contract is not conclusive of the relation. *J. R. Watkins Medical Co.* v. *Williams,* 124 Ark. 545, 187 S. W. 653. The test is, not whether the company actually directed the manner of the delivery of the oil, but is whether the company had the right to control the delivery. 14 R. C. L., § 67, of the article on Independent Contractors. And the majority are of the opinion that the contract between the company and Smith, as interpreted by the conduct of the parties under it, shows that it was the purpose of the company to retain complete control of everything done in connection with the sale and delivery of the oil, and that the testimony, in its entirety, warranted the finding that the drivers of the wagon were themselves the servants of the company."

In *Monk* v. *Jones,* 190 Ark. 1117, 83 S. W. 2d 526, we said: "The mere fact G. P. Scarborough was working for his co-appellees on a commission basis, and that he furnished the conveyances in which the merchandise was transported and also hired and fired the employees retained by him, is not conclusive that he was an independent contractor. We so expressly decided in Magnolia Petroleum Co. v. Johnson, supra," and in *Houston Oil Company* v. *McGuire,* 187 Ark. 293, 59 S. W. 2d 593, we said: "The test of the fluid as analyzed by Dr. Rose showed it contained 96 per cent. of gasoline and ignited at a temperature of 88 degrees, when the statute (§ 5903, Crawford & Moses' Digest, as amended by Act 277 of 1923) provides that, if the fluid ignites at a temperature of less than 140 degrees, it shall not be offered for sale for illuminating and heating purposes. * * *

"It certainly was not kerosene of the grade required by the statute for heating purposes, and it makes no difference where the mistake was made, since it was made by appellant or its agents."

We are also of the opinion that the jury was warranted in finding that there was no negligence, in the circumstances, on the part of either appellee or her mother, Mrs. Young. We are unable to find any negligence at all on the part of either.

As indicated, there was evidence that the oil which was purchased by Mr. Young for kerosene, as he had a right to assume, was a mixture of kerosene and gasoline, which would burn or flash at a point below 140° Fahrenheit, and chemical tests showed that it contained 15% gasoline, and was not safe for use in making a fire as was attempted here.

As was said in *Goode v. Pierce Oil Corporation*, 171 Ark. 863, 286 S. W. 1009, "it is a matter of common knowledge that refined kerosene is used to furnish light and as fuel for oil stoves. It is also commonly used in kindling fires. Hence in the absence of contributory negligence by the plaintiff, the evidence for the plaintiff was sufficient to allow a recovery by her."

We cannot agree that the jury's verdict was based upon speculation or conjecture. There was substantial testimony, both direct and circumstantial, sufficient to take the case to the jury on the question of appellant's negligence, in the circumstances.

Appellant complains because the court gave instruction No. 1, on its own motion, because said instruction was given in the language of the Arkansas Inspection Statutes, (Ark. Stat. (1947), §§ 53-604 and 53-608), and concluded with: "So, in this case if you find from the evidence that the defendant did not comply with the statute, then you may take such fact, together with all the other facts or circumstances in evidence into consideration in determining whether the defendant was negligent or not."

There was no error in this instruction. The language used in the two sections of the statute is unambiguous, clear and understandable from the layman's viewpoint. We have many times held that it was not error to give an instruction in the words of a statute when they are simple declarations of law which no person of reasonable intelligence could misunderstand. (*Missouri Pacific Transportation Company* v. *Parker, Admr.,* 200 Ark. 620, 140 S. W. 2d 997).

Other assignments of error by appellant relate to the giving, and refusal to give, certain instructions. In this connection, it suffices to say that we have examined all of the instructions, including those complained of and find that they correctly declared the law as applied to the facts.

Finding no error, the judgment is affirmed.