**The PILLSBURY COMPANY, Plaintiff,**

v.

**Jack C. SOUTHARD, d/b/a Hungry Jack's, Linda Thomas, and Michael White, Defendants.**

No. 85–144–C.

United States District Court, E.D. Oklahoma.

May 2, 1986.

Order Granting Plaintiff Defendant Southard's Profits From Infringement April 6, 1987.

Louis T. Pirkey, William D. Raman, Arnold, White & Durkee, Houston, Tex., Elsie Draper, Gable & Gotwals, Tulsa, Okl., for plaintiff.

William S. Dorman, Tulsa, Okl., James D. Wadley, McAlester, Okl., for defendants.

## ORDER OF PERMANENT INJUNCTION

SEAY, Chief Judge.

This matter was heard by a jury on April 18, 21, 22, and 23, 1986, in proceedings in which all parties appeared and were represented by counsel. On April 23, 1986, the matter of liability was submitted to the jury through seven special interrogatories and the jury returned its verdict favorable to plaintiff on those special interrogatories.

The court concludes from its review of the evidence and from the jury verdict that the plaintiff is entitled to a permanent injunction relating to defendants' use of the mark Hungry Jack's and confusingly similar marks for restaurant services. The court also concludes that further consideration should be given as to whether an accounting of defendants' profits should be awarded and whether attorney fees should be awarded to plaintiff in the present case.

It is, therefore, ordered by this court that:

(1) The use by the defendants, Jack Southard, Linda Thomas and Michael White, of the mark Hungry Jack's for restaurant services:

(a) constitutes federal trademark infringement of plaintiff's rights in its federally registered mark Hungry Jack under 15 U.S.C. § 1114(1);

(b) constitutes a false designation of origin and/or false description or representation of defendants' services under 15 U.S.C. § 1125(a);

(c) constitutes trademark infringement of plaintiff's common law rights in its mark Hungry Jack under the common law of the State of Oklahoma; and

(d) constitutes a deceptive trade practice under the Oklahoma Deceptive Trade Practices Act, Okla.Stat. 78 § 45 et seq.;

(2) The use by the defendant Jack Southard of the mark Hungry Jack's for restaurant services was an intentional violation of plaintiff's rights, and the defendant Jack Southard has been unjustly enriched from such use;

(3) Defendants Jack Southard, Linda Thomas and Michael White, together with each of their agents, servants, employees, attorneys, successors and assigns, and all of those in active concert with any of them, are permanently enjoined from:

(a) using the name or mark Hungry Jack or Hungry Jack's, or any other name or mark confusingly similar to Hungry Jack or Hungry Jack's, alone or in combination with other words or designs, as part of any trademark, service mark, trade name, corporate name, assumed name, or any other trade designation in connection with the sale or offering of food products or restaurant services within the United States; and

(b) performing or committing any other acts calculated or likely to cause confusion or mistake in the mind of the public, or to lead consumers to believe that any of the defendants' services come from or are associated with the goods or services of plaintiff, or are somehow sponsored or connected with plaintiff, or that there is some connection between plaintiff and any of the defendants, or from otherwise unfairly competing with plaintiff and from committing any other acts which disparage or destroy the public's recognition of Hungry Jack as a mark of plaintiff;

(4) Each defendant shall file with this court within thirty (30) days after entry of this order of permanent injunction, a written statement under oath setting forth in detail the manner in which the respective defendant has complied with this order;

(5) The parties are directed to file within thirty (30) days after the entry of this order their arguments in the form of briefs concerning whether the court should award plaintiff an accounting of defendants' profits;

(6) Plaintiff is directed to file within ten (10) days after the entry of this order any request for attorney fees which it may have, setting forth any authority and all other information which it wishes the court to consider in determining whether such fees should be awarded and, if so, the amount of such fees. Defendant, Jack Southard, may file objections thereto within ten (10) days thereafter, setting forth specific objections thereto and any matters he wishes the court to consider. The above periods of time may be extended upon application to the court and a showing of good cause for such extension.

(7) Pursuant to the provisions of 15 U.S. C. §§ 1116 and 1119, the Commissioner of Patents and Trademarks is directed to refuse registration of the mark Hungry Jack's and design as applied for by defendant Jack Southard, Application Serial No. 468,354, and to sustain the opposition of The Pillsbury Company to such registration as set forth in Opposition No. 70,975;

(8) Plaintiff is awarded its costs in this matter; taxation of costs shall be pursuant to Local Rule 6(e).

## ORDER GRANTING PLAINTIFF DEFENDANT SOUTHARD'S PROFITS FROM INFRINGEMENT

On October 30, 1986, a hearing was held on plaintiff's motion for accounting of defendant Southard's profits, pursuant to this court's order of May 2, 1986, for the purpose of determining defendant's profits and whether to award such profits, if any, to plaintiff in light of the jury's verdict herein.

Section 35 of the Lanham Act, 15 U.S.C. § 1117, provides, in pertinent part, as follows:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be as-

sessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.... If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum ... shall constitute compensation and not a penalty.

■ Where a trademark infringer unjustly profits from the illegal use of another's trademark, this law provides for an accounting and award of unjust profits, as compensation, to prevent the unjust enrichment of a trademark infringer. *Monsanto Chemical Company v. Perfect Fit Manufacturing Co., Inc.,* 349 F.2d 389 (2d Cir. 1965), *cert. denied,* 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966); *Maltina Corporation v. Cawy Bottling Co., Inc.,* 613 F.2d 582 (5th Cir.1980); *Blue Bell Co. v. Frontier Refining Co.,* 213 F.2d 354, 363 (10th Cir.1954).

■ There can be no doubt, and the court finds, from the evidence of the infringement trial herein and the jury's verdict that plaintiff should be, and is, entitled to all profits of the defendant Southard for those years in which defendant Southard's intentional infringement occurred, i.e. 1979–1986.

At the accounting hearing, plaintiff's evidence of defendant Southard's sales was by way of answers to interrogatories, which included some of defendant's tax returns. The court takes note of the fact that plaintiff was "handcuffed" in its ability to present full and complete evidence of defendant's sales by the defendant's incomplete, inaccurate, and dilatory discovery practices. As noted by the plaintiff in its brief:

"Testimony at the hearing on the accounting demonstrated that Southard had all of his financial information readily available to him at all times during the litigation. Southard testified that he kept copies of his income tax returns in his office. (Acct.Tr. 46). His bookkeeper testified that she kept records in her office. (Acct.Tr. 62–64). His accountant testified that he had copies of all income tax returns in his files in his office (effectively a phone call away) (Acct.Tr. 89, 98–99). His computer programmer testified that financial information was available on computer disks for three of the years. (Acct.Tr. 103–105).

Yet Southard provided responses to plaintiff's interrogatories which were grossly inconsistent with the information reflected in the tax returns and which alleged, under oath, that financial information was not available." (See also, Trial Tr. 572).

Although, by the evidence and authorities, this court has the discretion to deny defendant's evidence or increase defendant's profits because of such tactics, this court is of the opinion that such action "smacks" too much of a penalty, contrary to the expressed intention of the Lanham Act. *Boston Professional Hockey Asso., Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 597 F.2d 71, 77 (5th Cir.1979); 15 U.S.C. 1117. (This matter will be considered by the court on plaintiff's motion for attorney fees.) Thus, like the plaintiff, the court feels compelled to limit its award to the actual profits of defendant as shown by defendant's tax records, introduced at hearing on the accounting. Since the jury and this court have determined that defendant Southard's infringement occurred in each of the years 1979 through 1986, each of those years is treated as a separate period of infringement for the purpose of determining defendant's profits. *Wolfe v. National Lead Company,* 156 F.Supp. 883 (N.D.Cal.1957); *Coca–Cola Co. v. Dixi–Cola Laboratories, Inc.,* 57 F.Supp. 911 (D.C.Md.1944); *W.E. Bassett Company v. Revlon, Inc.,* 435 F.2d 656 (2nd Cir.1970).

The court finds that defendant Southard's yearly profits resulting from his infringement were as follows:

| | | |
|---|---|---|
| 1979 | – | $    510.00 |
| 1980 | – | $ 9,235.00 |
| 1981 | – | $11,934.00 |
| 1982 | – | .00 |
| 1983 | – | .00 |

1984 – .00
1985 – .00

(See defendant's Exhibit No. 100).

As to the year 1986, the court finds there was no further infringement by the defendant Southard after August of that year. (Acct.Tr. 11–17; Plaintiff's Exh. # 302). The plaintiff introduced income evidence (plaintiff's exhibits Nos. 154, 155, 163), and the defendant Southard introduced income evidence and "checks written" (Ch.Wr.) for the year 1986.

Accepting defendant's evidence of income, as shown on defendant's exhibit No. 107, the court finds defendant Southard's gross profits from infringement through August 1986 from Stores No. 1 and 2 to be $12,801.74, and $3,767.21 from Store No. 3. However, as to income for Store No. 3, the court finds $600.00 should be deducted from that figure. This $600.00 deduction represents income of $75.00 per month for rent of a trailer house which is income not related to defendant's trademark infringement (Acct.Tr. 72). Thus, the total infringement income of Store No. 3 is $3,167.21, for a total from all stores of $15,968.95.

■ The defendant has the burden of proving all elements of cost or deduction claimed, and this burden is not met by a blanket, undifferentiated, unidentified category of "overhead" or "checks written". *Maltina Corp. v. Cawy Bottling Co., Inc.,* supra at 586; *Sammons v. Colonial Press, Inc.,* 126 F.2d 341, 349 (1st Cir.1942). At this accounting hearing, the defendant Southard could not identify what any of the "checks written" (Ch.Wr.) on defendant's exhibit No. 107 were or what they were for. Neither Evelyn Renfro, defendant's bookkeeper (Acct.Tr. 58–65), nor Charles Enrico, defendant's manager or tax reports person (Acct.Tr. 69, 77–78), could identify any of the "checks written" items for 1986.

Accordingly, the court finds that the defendant Southard has not met his burden of proving any element of cost or deduction for 1986, and the defendant's profits from infringement for the year 1986 are $15,968.95.

The court finds the total amount of defendant's profits from infringement of plaintiff's trademark to be $37,647.95, which amount is awarded to plaintiff.