**DOWNTOWNER/PASSPORT INTERNATIONAL HOTEL CORPORATION, Appellant,**

**v.**

**NORLEW, INC.; Little Rock Hotel Partners, Ltd.; S & L Properties, Inc., general partner, Appellees.**

**No. 87–1203.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1987.

Decided Feb. 26, 1988.

A. Gregory Ramos, Nashville, Tenn., for appellant.

Colby S. Morgan, Jr. and James F. Russell, Memphis, Tenn., for appellees.

Before HEANEY and McMILLIAN, Circuit Judges, and BEAM,* District Judge.

BEAM, District Judge.

The Downtowner/Passport International Hotel Corporation (appellant) appeals from four determinations of the district court. The court issued a memorandum opinion dated January 12, 1987, with findings based upon the record made at a three day nonjury trial.

## BACKGROUND

The appellant is a hotel management systems franchisor. One of the defendants, Norlew, Inc. (Norlew) is the franchisee. Another defendant, Little Rock Hotel Partners, Ltd. (LRHP), a limited partnership, is the long-term lessee of hotel property in Little Rock, Arkansas. Norlew operated the hotel. S & L Properties, Inc. (S & L) is the corporate general partner of LRHP.

Norlew allegedly breached its obligations to appellant under the terms of the franchise agreement. Appellant sought judgment against Norlew for breach of contract and under other theories. At the same time, appellant was concerned that Norlew would not have enough assets to satisfy a judgment. Therefore, appellant amended its complaint and added LRHP and S & L as defendants.

Appellant hoped that by proving that an agency relationship existed between Norlew and the limited partnership, or by proving that Norlew had an ownership interest in the limited partnership, appellant could reach both the assets of LRHP and its general partner, S & L, when the time came to collect on any judgment obtained against Norlew.

## I. HOTEL MANAGEMENT AGREEMENT

LRHP was, for the purposes of this case, the owner of a hotel property located in Little Rock, Arkansas. On November 24, 1980, John Lewis and Norman Krug, who also managed other hotels through Norlew, entered into a management agreement with LRHP to operate the Little Rock hotel. On December 15, 1980, Lewis and Krug assigned their individual interests under the contract to Norlew.

At trial, appellant contended that the management agreement made Norlew an agent of LRHP. As earlier indicated, it was appellant's theory that LRHP, as principal of Norlew, should be liable for any damages caused by Norlew.

The trial court held that the agreement did not create an agency relationship. The court found that the involvement was one of landlord and tenant—not agent and principal. The court, therefore, dismissed all claims against LRHP and its general partner, S & L. This is the first determination of which appellant complains.

Agency is a legal concept which depends upon the existence of factual elements. 2A C.J.S., Agency § 5, at 558 (1972). The district court's findings of fact will not be disturbed if not clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). Therefore, the question before us is whether the court was clearly erroneous in finding that the management agreement did not create an agency relationship between LRHP and Norlew.

There are at least two elements in a relationship that must exist in order to create an agency. First, the "agent" must both assume to do the business of the "principal" and render an account of it. *Hinson v. Culberson–Stowers Chevrolet, Inc.*, 244 Ark. 853, 855, 427 S.W.2d 539, 542 (1968). Second, the principal must have the right to control the agent in *the activity entrusted to him.* See *Sinclair Ref. Co. v. Piles*, 215 Ark. 469, 472–73, 221 S.W.2d 12, 15 (1949); 2A C.J.S. Agency, § 6, at 560

---

* The Honorable C. Arlen Beam, Chief United States District Judge for the District of Nebraska, sitting by special designation. On November 9, 1987, Judge Beam was confirmed as a United States Circuit Judge for the Eighth Circuit.

(1972); *see also Doane Agricultural Serv. v. Coleman*, 254 F.2d 40, 41–44 (6th Cir.) (discussing when the powers of one party and the obligations of another party create an agency relationship in the context of certain liabilities), *cert. denied*, 358 U.S. 818, 79 S.Ct. 29, 3 L.Ed.2d 60 (1958).

By determining that the relationship was that of landlord and tenant, the trial court found that both elements were absent. When the court found that the agreement provided for an agreed upon price for rent, the court implied that Norlew was not obligated to render an account of its financial operations.

■ The agreement itself supports such a finding. For the five years that Norlew was contractually bound, it had only to pay a flat monthly fee. Norlew bore all losses and could keep all profits. Therefore, it is clear that the district court was correct in this regard.

The language of the agreement also demonstrates that LRHP had no control over the matters entrusted to Norlew, *i.e.*, control over Norlew's operation of the hotel. Quoting from the agreement, "[Norlew, Inc.] shall be in sole charge of the operation." Indeed, it appears that Norlew could choose which, if any, franchise under which the hotel would be operated.

Based on this evidence, we agree that Norlew was not LRHP's agent for purposes of potential liability to appellant.

## II. ASSIGNMENT OF PARTNERSHIP INTEREST

On the same day that LRHP, Lewis and Krug concluded the Hotel Management Agreement, November 24, 1980, the parties also prepared a Supplemental Agreement. S & L, a corporation, was the general partner in LRHP. Paul Levy and David Silberstein were limited partners.

The Supplemental Agreement purported to convey one half of the interest of S & L, Silberstein, and Levy in LRHP to Lewis and Krug. One of the partnership's assets was, of course, its ownership interest in the hotel. On December 15, 1980, Lewis and Krug conveyed their interest under the Supplemental Agreement to Norlew.

Appellant argued that even if Norlew was not the agent of LRHP, the Supplemental Agreement made Norlew a partner in LRHP. Thus, appellant sought recourse to LRHP's assets on the theory that Norlew's partnership interest created partnership liability on the part of LRHP. Similarly, appellant sought recourse to S & L's assets on the theory that S & L, as the general partner of LRHP, would be ultimately liable should LRHP's assets prove to be insufficient.

The district court found that appellant failed to show that an interest in LRHP had indeed been conveyed. The agreement did purport to assign one-half the equity interest of Levy, Silberstein, and S & L in LRHP. However, Silberstein never signed the agreement. Nor, for that matter, did anyone sign on behalf of S & L. Under Arkansas law, partnership interests cannot be conveyed without the consent of all limited and general partners. *See* Ark.Stat. Ann. § 65–319 (1947) (current version at 4 Ark.Stat.Ann. § 44–119); *see also* Ark.Stat. Ann. § 65–542 (1947) (current version at 4 Ark.Stat.Ann. § 43–704).

Notwithstanding the fact that only one of the limited partners of LRHP had signed the Supplemental Agreement, appellant introduced four theories by which it attempted to preclude LRHP and S & L from contesting appellant's claim that the Supplemental Agreement gave Norlew an interest in LRHP. Three of appellant's claims were based on statements that Norlew made in which Norlew claimed an ownership interest in LRHP. The court considered these theories and properly rejected them because the question was whether S & L and Silberstein had consented to the agreement, not whether Norlew had.

■ Appellant's fourth theory stemmed from an admission by LRHP in a Response to a Request for Admissions that the Supplemental Agreement was genuine. The court reasonably determined that the "admission" admitted nothing more than that the document in question was the unconsummated agreement that the parties were

considering. The district court thus properly determined that Norlew had not acquired an interest in LRHP and rightly dismissed LRHP and S & L from the lawsuit.

### III. CONTRACT CLAIM

The next series of events began on January 1, 1981. Norlew, equipped with its right to operate the hotel as assignee of the management agreement, entered into a franchise contract with Hotel Systems of America (HSA). HSA was the franchisor corporation for the Downtowner hotel chain.

The contract allowed Norlew to operate a Little Rock hotel as a Downtowner hotel. This included using Downtowner logos on outside signs, ash trays, towels and stationery. The hotel was also to be listed in directories and advertising as a Downtowner hotel. Finally, potential guests, nationwide, could call an (800) number operated by HSA. HSA would then reserve a room for such guests at the Little Rock Downtowner.

Norlew was to pay the franchisor $630.00 a month. The contract was to extend for twenty years, but was freely terminable at the end of each five-year period. The contract also had a liquidated damages clause. Should either party terminate for cause, the breaching party was to pay the nonbreaching party one-half the monthly fee multiplied by the number of months remaining prior to the next date upon which the contract would have been freely terminable.

Appellant purchased HSA in April of 1982. Appellant thus became the successor franchisor under the January 1, 1981, contract. On September 28, 1983, appellant terminated the contract because Norlew had defaulted on $5,075.99 in monthly fees. The district court awarded damages only for the amount past due, and in so doing, voided the liquidated damages clause of the agreement. Appellant understandably appeals the court's refusal to enforce the liquidated damages clause.

The district court ruled that the liquidated damages clause in the contract was a penalty under Tennessee law. The court stated that "where the parties intended to fix an amount as liquidated damages, recovery will be limited to actual damages if the amount stipulated for is so greatly in excess of the actual damages that it is, in effect, a penalty." (Citing *Eller Bros., Inc. v. Home Fed. Sav. & Loan*, 623 S.W. 2d 624, 628 (Tenn.App.1981)). The court decided that because of increased competition in the hotel market and the unprofitability of the hotel, the stipulated remedy so greatly exceeded appellant's damages as to be void as a penalty.

We affirm the court's interpretation of Tennessee law. We reverse its order denying enforcement of the stipulated remedy.

Damage awards are usually reviewed under the clearly erroneous concept embodied in Fed.R.Civ.P. 52(a). *Howard v. Green*, 555 F.2d 178, 182–83 (8th Cir.1977). Under that standard, finding that the remedy was a penalty was erroneous.

█ The contract gave appellant the right to receive $630.00 a month. Increased competition in the Little Rock hotel market magnified the value of that right because it was no longer possible for appellant to secure an alternative Little Rock franchisee willing to pay that amount per month. Profitability of the hotel itself was not a condition precedent to appellant's right to collect the monthly fee. Moreover, there was testimony that appellant sought a replacement franchisee without success.

Finally, appellant clearly established proof of damages that exceeded the stipulated amount. Appellant was not receiving the $630.00 a month which, but for Norlew's breach, appellant would have received. The stipulated remedy called for only one-half that amount. We, therefore, reverse the order voiding the liquidated damages clause. We remand the case and direct the district court to enter judgment for an additional $8,505.00, the amount which appellant was to receive under the contract.

### IV. LANHAM ACT CLAIM OF TRADEMARK INFRINGEMENT

After appellant terminated the Norlew franchise, appellant ordered Norlew to

cease using Downtowner trademarks and logos, and generally, to stop operating as a Downtowner. Despite appellant's requests, Norlew continued to use hotel supplies bearing the Downtowner logo. Norlew also continued to display a large sign over the hotel. The sign said "Downtowner." There was a smaller sign over the entrance that said "Downtowner." Inside, there were also items with Ramada Inn and Quality Inn trademarks.

The Lanham Act provides that any person who shall "use in commerce * * * a registered mark in connection with the * * * advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake" without consent of the registrant shall be liable in a civil action. 15 U.S.C. § 1114(1)(a). The trial court held that appellant failed to demonstrate that the unauthorized use of the Downtowner trademark was likely to cause confusion, mistake or deception.

Plaintiff bore the burden of proving the likelihood of confusion. *Lindy Pen Co. v. Bic Pen Corp.,* 725 F.2d 1240, 1243 (9th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985). The determination that appellant failed to show a likelihood of confusion among potential patrons is reviewable under the clearly erroneous standard. *Id.; Vitek Sys., Inc. v. Abbott Laboratories,* 675 F.2d 190, 192 (8th Cir.1982).

In deciding whether there is a likelihood of confusion, a court is to look at all the circumstances. *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1329 (8th Cir.1984). Actual confusion is not essential. However, there must be a substantial likelihood that the public will be confused. *Vitek Sys.,* 675 F.2d at 192.

The trial court did not enumerate the facts that led it to find that there was not the requisite showing of the likelihood of confusion. However, after reviewing the record, we are compelled to hold that the court was clearly erroneous on this issue.

■ Initially, the Little Rock hotel was a revoked franchisee that used the same trademarked items it used under the con-

tract. On this there was no dispute. The appellees testified that they sought to deplete the surplus of trademarked items that were on hand at the time of contract revocation. Such items as credit card application forms, key rings, ash trays, shoe shine cloths, and hotel billing receipts continued to bear the Downtowner logo. Moreover, the large sign on the hotel and the smaller one at the entrance continued to be displayed for at least a year past the date of revocation. Under these circumstances, the quantum of proof necessary to establish a likelihood of confusion is less. *See Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir.1983) (stating that "[c]ommon sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks"), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). *See generally Exxon Corp. v. Texas Motor Exch. of Houston, Inc.,* 628 F.2d 500, 504–06 (5th Cir.1980) (setting forth the relevant criteria to evaluate whether there is a likelihood of confusion).

The record was devoid of any evidence negating confusion that potential patrons would experience upon entering the hotel after passing under the two Downtowner signs. Their belief that appellant was the hotel's franchisor would be reinforced by the Downtowner paraphernalia inside the hotel. Also, any dissipation of confusion due to the existence of Ramada Inn and Quality Inn items does not cure the likelihood of confusion that initially existed upon entering the hotel. *See Lindy Pen Co. v. Bic Pen Corp.,* 796 F.2d 254, 256 (9th Cir.1986).

■ Using the rationale of *Lindy Pen,* we find that a travel weary hotel patron might not notice the inconsistent trademarks. He or she would, thus, still assume that the hotel was a Downtowner. Bad experiences may deter the traveler from staying at a Downtowner at his or her next destination. And, if a traveler did conclude that the hotel was not a Downtowner it is uncertain whether a traveler would gather

**220**

up his or her luggage and begin a search for another hotel. *See id.*

The objectives of the Lanham Act are to protect both the trademark and the public. *U.S. Jaycees v. Philadelphia Jaycees,* 639 F.2d 134, 142 (3d Cir.1981). Our holding is consistent with those objectives.

However, on the question of Lanham Act damages, we remand for entry of nominal damages only. Although the trial court did not consider compensatory damages as it had found that there was no infringement, a review of the record indicates that any award greater than nominal damages would be based on sheer speculation. Finally, because appellant was awarded attorney fees based on the underlying contract, we affirm the court's denial of attorney fees under the Lanham Act.

Accordingly, the district court opinion is reversed in part and affirmed in part. This action is remanded for proceedings consistent with this opinion.