**AMERICAN EXPRESS COMPANY,**
**Plaintiff,**

**v.**

**AMERICAN EXPRESS LIMOUSINE SERVICE LTD., a/k/a American Express Town Car Service, a/k/a American Express Lincoln Town Car Service, Donald Barfield and Ralph Cantone, Defendants.**

**No. CV 91–1117.**

United States District Court,
E.D. New York.

Feb. 26, 1992.

See also 772 F.Supp. 729.

Weiss, Dawid, Fross, Zelnick, and Lehrman, P.C. by Richard Lehv, New York City, for plaintiff.

Edward M. Rosensteel, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

On September 23, 1991, this Court granted summary judgment to the American Express Company ("American Express" or "plaintiff") in the above-referenced action against American Express Limousine Service ("AELS") and its owners Ralph Cantone and Donald Barfield (collectively "defendants") for defendants' use of plaintiff's trade names in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and New York General Business Law § 368–d. In that Order, defendants were enjoined from further use of the trade names AMERICAN EXPRESS and AMEX and were further ordered to

> render an accounting to plaintiff of all of their use, exploitation, profits and gains derived from the use of the names AMEX, AMERICAN EXPRESS LIMOUSINE SERVICE, AMERICAN EXPRESS TOWN CAR SERVICE AND AMERICAN EXPRESS LINCOLN TOWN CAR SERVICE from their dates of first use and that defendants pay over to plaintiff all profits derived from such use to date, including pre-judgment interest thereon.

Currently before the Court is plaintiff's motion for an award of $319,174, representing defendants' alleged profits from their infringing activities, jointly and severally against each of the defendants.[1] For the reasons discussed below, plaintiff's motion is denied.

## BACKGROUND

According to defendants' affidavits and tax returns, between January 1990 and September 1991 Donald Barfield and Ralph Cantone owned and operated AELS, a small limousine car-service doing business in the tri-state area, principally on Long Island. After this Court granted summary judgment to plaintiff in September 1991 for defendants' trademark infringement, AELS immediately ceased operating. To fulfill their obligation to render an accounting to American Express, defendants produced copies of AELS' tax returns for the years 1989–91 and a financial statement dated September 30, 1991, prepared by a certified public accountant. Defendants later supplemented these submissions with copies of AELS' bank statements and Barfield's and Cantone's personal income tax returns for 1989–91.

AELS' 1989 tax return shows no business activity at all. Its 1990 return shows gross sales of $52,612, cost of goods sold of $45,110, and other deductions of $7,676, for an operating loss of $174. Its 1991 return reports revenues of $136,789, general and administrative expenses of $135,470,[2] and taxes of $1,030 for a net profit of $289.

American Express asserts that because they did not timely receive from defendants a copy of AELS' 1990 tax return, it was therefore justified in extrapolating AELS' 1990 gross profits on the basis of its reported gross profit for January 1991 to September 1991.[3] Plaintiff thus calculates AELS' 1990 gross profit to be $182,385 for a 1990–91 total of $319,174.

AELS responds by noting that after its business expenses are deducted from its gross income, it earned nothing more than *de minimis* profits from its two year existence. As a service business, AELS' principal business expense was the cost of paying its drivers. On an irregular basis, as business conditions required, AELS used the services of seventeen independent contractors as drivers, each of whom received 85% of his fares as commissions. Like-

---

1. Inexplicably, plaintiff's memorandum of law opens with a request for only $290,000.

2. The general and administrative expenses include: advertising–$599; automobile expenses–$2,916; bank charges–$1,065; commissions–$111,316; entertainment–$215; fees–$801; insurance–$3,676; legal–$1,081; miscellaneous–$64; office expense–$611; professional fees–$1,550; repairs–$1,078; supplies–$29; and telephone–$10,469.

3. Defendants provide an affidavit signed by their attorney stating that he had timely sent the 1990 tax return to plaintiff. They include a copy of the 1990 return with their Affidavit in Opposition to Award of Defendants' Profits.

**336**

wise, when Barfield and Cantone drove their limousines for AELS, they too acted as independent contractors and received 85% of their fares as commissions. (Neither Barfield nor Cantone received any compensation as officers and directors, nor were they compensated for their substantial efforts in managing AELS).

American Express asserts that Barfield and Cantone were AELS' only drivers and that AELS is not entitled to deduct their commissions from its gross profits unless Barfield and Cantone are held personally liable for these commissions.

Finally, American Express argues that since defendants have not produced documentation in support of the deductions AELS took on its tax returns, all these deductions should be stricken.

## DISCUSSION

As discussed above, American Express, having successfully defended its trademark, now seeks to recover $319,174, its extrapolation of AELS' gross profits during 1990–91, the entire time AELS conducted business. Plaintiff's recovery for violation of its trademark rights is governed by 15 U.S.C. § 1117(a) which provides in relevant part:

> When a violation of any right of the registrant ... shall have been established ... the plaintiff shall be entitled, *subject to the principles of equity,* to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.... In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.... If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

15 U.S.C. § 1117(a) (emphasis added). This statute clearly calls for the district court to use its discretion in making all monetary awards. *See e.g., Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103,

111 (2d Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989); *Burger King Corp. v. Mason,* 710 F.2d 1480, 1495 & n. 11 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,* 523 F.2d 1331, 1344 (2d Cir. 1975). Therefore, the issues now before the Court are the amount of defendants' profits and whether, under principles of equity, plaintiff is entitled to recover them.

Plaintiff's demand for $319,174 is clearly absurd. The Court first notes that although American Express was quick to extrapolate AELS' 1990 gross profits on the basis of its 1991 tax return, it never bothered to recalculate those profits when it did receive the 1990 return. If American Express had made that simple recalculation, it would have found that AELS' gross profit for 1990–91 was only $189,401.

■ American Express next argues that AELS is not entitled to *any* deductions from its gross profits for its business expenses because the documents it produced in its accounting prove neither the validity of its expenses nor their relationship to its infringing activities. *See Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach,* 833 F.2d 1484, 1488 (11th Cir.1987) (after plaintiff proves sales, "the burden then shifts to the defendant, which must prove its expenses and other deductions"); *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966, 973 (2d Cir.1985) ("Where the defendants fail to produce evidence to refute plaintiffs' evidence of defendants' sales of counterfeit products, the court must rely on less certain methods of proof" (citing *Deering, Milliken & Co. v. Gilbert,* 269 F.2d 191, 193 (2d Cir.1959))). AELS responds by arguing that its production of tax returns, which set forth specific amounts for its various business expenses, met its obligation to provide an accounting and satisfied its burden of proof. *See Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 7 (2d Cir. 1989) (defendant's proof need not be in "minute detail"), *cert. denied, sub nom.,*

*Banff, Ltd. v. Salant Corp.*, 494 U.S. 1029, 110 S.Ct. 1477, 108 L.Ed.2d 614 (1990).

In general, it appears that the mere production of tax records is not sufficient to satisfy a court order for an accounting. *Cf. Wesco Mfg.*, 833 F.2d at 1488 (evidence of tax returns constituted sufficient proof to require an accounting); *but cf. Pillsbury Co. v. Southard*, 682 F.Supp. 497, 500 (E.D.Okl.1986) (limiting "award to the actual profits of defendant as shown by defendant's tax records"). However, even assuming that defendants are at fault for failing to produce more detailed records, they produced sufficient records for the Court to estimate their net profits. *See e.g., American Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060 (2d Cir. 1990) (applying net profit ratio of entire business when defendant's records did not show net profit ratio for infringing goods); *Manhattan Industries*, 885 F.2d at 7 ("Of course, by 'profits' we mean net profits"); *Louis Vuitton, S.A. v. After Dark Boutique*, 680 F.Supp. 1507, 1510–12 (N.D.Fla. 1988) (where defendant failed to maintain records of its sales of infringing merchandise, court awarded profits based on evidence of known sales and expert testimony on cost of goods).

The business expense deductions listed in AELS' 1991 tax returns, other than commissions, amount to approximately 18% of its gross profit (and AELS' bank statements lend credibility to its gross profit figures).[4] Even without additional proof, this level of business expense seems to be entirely reasonable for a small limousine car-service and the Court finds that these expenses were properly deducted from gross profits.

■ The next set of issues to be resolved relates to AELS' right to deduct its expenses for commissions paid to drivers from its gross profits and whether or not Barfield and Cantone are personally liable

for "profits" from AELS which they earned in the form of commissions. American Express does not dispute that commissions paid to drivers other than Barfield and Cantone would be deductible expenses for AELS. *See e.g., W.E. Basset Co. v. Revlon, Inc.*, 435 F.2d 656, 665 (2d Cir. 1970). Unfortunately, AELS' tax returns do not distinguish between commissions paid to Barfield and Cantone and commissions paid to its other independent contractor-drivers.[5] However, although Barfield's and Cantone's 1990–91 individual tax returns do not contain specific information regarding source of income, they indicate that Barfield could have earned no more than $40,000 from AELS commissions and Cantone no more than $20,000 during the period in question. Thus, defendants' profits would be, at most, $60,000.

Plaintiff cites three cases for the proposition that a corporate defendant cannot deduct from its gross profits the money it paid to individual defendants who were using the infringing marks. *See Wolfe v. Nat'l Lead Co.*, 272 F.2d 867, 873 (9th Cir.1959), *cert. denied*, 362 U.S. 950, 80 S.Ct. 860, 4 L.Ed.2d 868 (1960); *Durbin Brass Works, Inc. v. Schuler*, 532 F.Supp. 41, 44 (E.D.Mo.1982); *Champion Spark Plug Co. v. Sanders*, 108 F.Supp. 674, 678–79 (E.D.N.Y.1952), *aff'd*, 204 F.2d 125 (2d Cir.1953). However, in each of these cases, the disallowed payment was for salaries paid to infringing partners;[6] in this case Barfield and Cantone infringed upon plaintiff's trademark in their capacity as officers and directors of AELS, but they earned their commissions, like all of AELS' other drivers, as independent contractors. While the cloak of "independent contractor" may not be sufficient to shield the earnings of defendant officers and directors in all infringement cases, in the specific circumstances of this case, where (1) there has been no finding of willful

4. Although AELS' 1990 tax return does not include a break-down for various expenses, the Court assumes that its business expenses follows the 1991 pattern.

5. Although American Express states that Barfield and Cantone were AELS' sole drivers, de-

fendants name seventeen other independent contractor drivers who worked for AELS.

6. Moreover, in *Wolfe,* the court confined its holding regarding the deductions of partnership salaries to the specific facts of that case. *Wolfe,* 272 F.2d at 873.

misconduct on the part of defendants [7]; (2) defendants' infringing activities ceased immediately after this Court issued its Order of September 23, 1991; (3) there is no evidence of any loss to plaintiff's business or reputation; (4) much of AELS' gross profit was attributable to repeat business and was therefore a result of customer satisfaction rather than trademark infringement; (5) AELS lost money in its first year of operations and made only a *de minimis* profit in its second; and (6) Barfield and Cantone earned no greater commissions from their work as drivers for AELS than any other AELS driver, the Court holds that the commissions are a deductible business expense for AELS and, as to Barfield and Cantone, that they do not represent profits earned by infringing activities.

■ The only remaining question is whether American Express is entitled to the profit of $289 earned by AELS in 1991. *See Wolfe*, 272 F.2d at 870 (plaintiff's recovery can be based on infringer's profitable years without setoff for losses in unprofitable years).

In *Faberge, Inc. v. Saxony Prods., Inc.*, 605 F.2d 426 (9th Cir.1979), a case involving infringing perfume bottles, the Ninth Circuit affirmed the district court's decision to deny plaintiff an award for damages or profits because the defendant had suffered enough through litigation and other costs to deter further infringement. *Id.* at 429. Furthermore, the appellate court noted that the district court retains discretion not to award damages even in the case of a willful infringement. *Id.*

Although this Court, in its Order of September 23, 1991, ordered defendants to pay over to plaintiff all profits derived from its infringing activities, upon examining the records produced by defendants in their accounting and the parties' papers in this motion for an award of profits, the Court now finds that defendants have suffered enough to deter future infringement and under the particular circumstances of this case, the injunction alone is sufficient remedy. *See* 15 U.S.C. 1117(a); *see also Downtowner/Passport Intern. Hotel v. Norlew, Inc.*, 841 F.2d 214, 220 (8th Cir. 1988) (granting only nominal damages against former hotel franchisee where greater award would be "based on sheer speculation"); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena*, 433 F.2d 686, 706–07 (2d Cir.1970) (plaintiff generally needs to show intentional deception to be awarded damages), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Gilbert/Robinson v. Carrie Beverage–Missouri*, 758 F.Supp. 512, 528 (E.D.Mo.1991) (injunction is sufficient remedy even when infringing bar-restaurant was in direct competition with trademark holder); *Ithaca Industries v. Essence Communications, Inc.*, 706 F.Supp. 1195, 1209 (W.D.N.C. 1986) (equity dictates against award of profits when parties are not competitors and successful party suffered no loss to sales or reputation); *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F.Supp. 384, 390 (N.D.Ala.1983) (injunction held to be sufficient remedy when executive search company improperly infringed upon accounting firm's name); *Ramada Inns, Inc. v. Apple*, 482 F.Supp. 753, 758 (D.S.Car.1980) (refusing to grant monetary damages when defendants did not profit from their infringement and damages were not necessary to deter those defendants from future infringement).

### CONCLUSION

Accordingly, for the foregoing reasons, American Express' motion for an award of profits is denied in its entirety.

SO ORDERED.

---

7. Indeed, AELS applied to American Express and was granted permission to accept American Express credit cards.