**LINDY PEN CO., INC. and Blackfeet Plastics, Inc., Plaintiffs-Appellants,**

v.

**BIC PEN CORPORATION, Defendant-Appellee.**

No. 84–6324.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1986.

Decided July 31, 1986.

Thomas A. Turner, Beverly Hills, Cal., for plaintiffs-appellants.

Thomas F. Reddy, New York City, for defendant-appellee.

Before HUG and FLETCHER, Circuit Judges, and INGRAM,[*] District Judge.

FLETCHER, Circuit Judge:

Plaintiff Lindy Pen Co. (Lindy) appeals the district court's second dismissal of its claim against Bic Pen Corp. (Bic) for trademark infringement. On remand from this court, the district court made new findings of fact and concluded there was no likelihood of confusion of Lindy's and Bic's "Auditors" pens in the telephone sales market. We reverse and remand to the district

---

[*] Hon. William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

court for issuance of an injunction and a determination of damages.

## BACKGROUND

Lindy has used the word "Auditor's" in connection with its 460–F model fine point ballpoint pen since 1955. It registered the trademark "Auditor's" in 1966. Since 1979, Bic has imprinted the words "Auditor's fine point" on its model PF fine point ballpoint pen. Lindy sued Bic in 1980 claiming trademark infringement.

Following a bench trial, the district court entered judgment for Bic on all claims. *Lindy Pen Co. v. Bic Pen Corp.*, 550 F.Supp. 1056, 1062 (C.D.Cal.1982). Lindy appealed. We reversed the district court's conclusion that there is no likelihood of confusion of the two pens in the telephone sales market and remanded the case to the district court for additional proceedings with respect to telephone sales. 725 F.2d 1240, 1249 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985).

On remand, the district court received no new evidence but made additional findings of fact and conclusions of law with respect to telephone sales. The court identified two submarkets comprising the telephone sales market—the telephone solicitation submarket and the telephone order submarket. The court found that Lindy had a minimal presence in the telephone solicitation market, but that both Lindy and Bic pens were sold in the telephone order market. The court then evaluated the "foundational facts" against those set out in prior Ninth Circuit cases and concluded that Lindy had failed to establish a likelihood of confusion. The district court again ruled in favor of Bic, and Lindy timely appealed.

## ANALYSIS

### 1. *Propriety of Analyzing All the Foundational Facts*

■ Lindy first claims that given the district court's findings that both Bic and Lindy pens are sold in the telephone order market and that the marks are confusingly

similar when initially encountered, it was improper for the court to proceed to consider other foundational facts. Instead, Lindy argues, the court should have followed *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979), and concluded automatically that there was a likelihood of confusion. This issue as to the correct test for trademark infringement is a question of law reviewable de novo.

■ We reject Lindy's argument. The *AMF* court, in a footnote, made it clear that if the goods compete for sales and the marks are "sufficiently similar that confusion can be expected," at least one other factor, the alleged infringer's intent in adopting the mark, must be weighed. *See id.* at 348 n.9. The *AMF* court in our view implicitly incorporated consideration of other foundational factors. Our view is shared by more recent cases, including the prior appeal in this case, in that all have considered a range of factors in determining the likelihood of confusion. *See, e.g., Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir.1986); *Lindy Pen Co.*, 725 F.2d at 1243–44; *Carson Manufacturing Co. v. Carsonite International Corp.*, 686 F.2d 665, 670 (9th Cir.1981), *modified on rehearing on other grounds*, 688 F.2d 647 (9th Cir.1982) (en banc), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983); *Alpha Industries, Inc. v. Alpha Steel Tubes and Shapes, Inc.*, 616 F.2d 440, 443–44 (9th Cir.1980). In determining whether the goods "compete for sales" and whether "the marks are sufficiently similar that confusion can be expected," a court appropriately inquires into factors such as the strength of the mark, evidence of actual confusion, marketing channels used, and degree of purchaser care. These are precisely the foundational facts evaluated and considered by later courts. *AMF* did not set out a separate "automatic" rule, but rather expressed the obvious conclusion that a likelihood of confusion is more readily found when the goods compete and the marks are very similar. The district court

properly considered all the factors in determining the likelihood of confusion.

### 2. Foundational Fact of Similarity

On remand, the district court found that both Bic and Lindy pens are sold through the telephone order market, and that some telephone customers "simply ask for an 'Auditor's' pen." The district court found that Lindy's "Auditor's" mark and Bic's "Auditor's Fine Point" mark "are confusingly similar when initially encountered in the telephone sales market, since the purchaser is not able to view the product at the time of purchase." However, the fact that telephone purchasers could view the pens when they were delivered following a purchase negated or cured the initial similarity. Lindy contends that this "ex post facto confusion rectification" cannot negate or cure the initial confusing similarity of the marks. The district court's finding as to a foundational fact is reviewed under the clearly erroneous standard. *Lindy Pen Co.*, 725 F.2d at 1243.

Although we have found no cases involving a post-sale "cure" of initial similarity between marks, *Dreyfus Fund, Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108 (S.D.N.Y.1981), is analogous. In *Dreyfus*, the defendant bank used a lion in a series of advertisements that allegedly infringed Dreyfus's registered marks containing pictures of a lion. *Id.* at 1111. Dreyfus preliminarily sought to enjoin the bank from continuing its advertising campaign. *Id.* at 1110–11. The court stated:

> The Bank assumes in its arguments that the statutory requirement of consumer confusion is one that requires a showing that consumers will confuse the services of the Bank and Dreyfus, and will remain confused throughout the process of actually purchasing those services. This is not so. The law requires only that some form of confusion be proved likely, not that it be shown to persist and to cause lost sales. The Lanham Act is broadly aimed at protecting the effectiveness of marks and, as a result, courts are regularly called upon to

decide whether to enjoin the use of similar marks where a recognized form of confusion might be resolved by close customer scrutiny or attention to distinguishing words or phrases.

*Id.* at 1122 (citations omitted). The court found that the ads could lead to customer confusion, *id.* at 1122–23, and granted the motion for a preliminary injunction. *Id.* at 1125–26.

Neither Bic nor the district court points to any evidence in the record showing that post-sale inspection is likely to uncover and rectify prior confusion. When pens are delivered, a customer might move them automatically to a supply room without detailed inspection, or the person receiving the delivery might not be the same individual who placed the telephone order. Even if a customer realized at the time of delivery that the pens delivered were not the pens supposedly ordered, the customer might decide not to bother to return and exchange the pens at that late stage.

■ We thus conclude that post-sale inspection cannot negate or cure initial similarity. We hold that the district court's finding on the foundational fact as to the similarity of the marks is clearly erroneous. In fact, the district court has found that the marks are virtually identical when encountered in the telephone order market.

### 3. Conclusion as to Likelihood of Confusion

On remand, the district court concluded that Lindy failed to establish a likelihood of confusion. We review this conclusion under the clearly erroneous standard. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir.1985) (en banc). Since the district court's finding on the foundational fact of similarity is clearly erroneous, we must reweigh all the foundational facts to determine whether the district court was clearly erroneous in concluding that Lindy had failed to establish a likelihood of confusion.

■ Two key factors weigh in Lindy's favor: Lindy and Bic pens compete in the

telephone order market, and they are virtually identical when encountered in that market. These two factors indicate a likelihood of confusion in the telephone order market, and we hold that the district court's conclusion to the contrary is clearly erroneous. The foundational factors that weigh in Bic's favor—Lindy's mark is weak, no actual confusion was shown, telephone purchasers exercise a greater degree of care, Bic did not intend to capitalize on Lindy's mark, and there is no likelihood either party will expand its product lines—are not sufficient to overcome the overwhelming likelihood of confusion resulting from the direct competition of pens with virtually identical marks. *See Park 'N Fly*, 782 F.2d at 1509 (where marks are virtually identical, services provided are identical, and marketing channels are convergent, there is a likelihood of confusion despite no evidence of actual confusion, weak mark, and no intent to capitalize).

### 4. *Incontestability of Lindy's Mark*

In our prior opinion, relying on Ninth Circuit precedent, we stated: "Incontestability of a mark may protect the registrant's mark from cancellation, but is of no offensive use." 725 F.2d at 1247. The Supreme Court recently overruled this precedent in *Park N'Fly, Inc. v. Dollar Park and Fly*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). The Court, resolving a conflict between the Seventh and Ninth Circuits, held "that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive." *Id.*, 105 S.Ct. at 667. Because we previously ruled that Bic could not succeed on the fair use/descriptive mark defense, 725 F.2d at 1248, the Supreme Court's decision in *Park 'N Fly* does not affect the result in this case.

### CONCLUSION

We reverse the district court. We conclude that Lindy has established a likelihood of confusion in the telephone order market and, accordingly, that Bic has infringed Lindy's trademark. We remand the case to the district court with instructions to enter an order enjoining Bic from using the word "Auditor's" on or in connection with its pens. We additionally instruct the district court to order an accounting and to award damages and other relief as appropriate.

REVERSED AND REMANDED.