**LINDY PEN COMPANY, INC.; Blackfeet Plastics, Inc., Plaintiffs–Appellants, Cross–Appellees,**

v.

**BIC PEN CORPORATION, Defendant–Appellee, Cross–Appellant.**

Nos. 90–55248, 90–55249.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1992.

Decided Jan. 14, 1993.

Thomas A. Turner, Jr., Los Angeles, CA, for plaintiffs-appellants, cross-appellees.

Jonathan A. Marshall, Rory J. Radding, Thomas A. Canova, Thomas F. Reddy, Jr., Pennie & Edmonds, New York City, Frederick A. Lorig, Bright & Lorig, Los Angeles, CA, for defendant-appellee, cross-appellant.

Before: SNEED and D.W. NELSON, Circuit Judges, and ROLL,* District Judge.

ROLL, District Judge:

This trademark infringement case brought by Lindy Pen Company, Inc. against Bic Pen Corporation returns to this court for the third time seeking review of the district court's damages order upon remand. For the reasons set forth below, we affirm the decision of the district court and deny Bic's cross-appeal.

## INTRODUCTION

The origins of this case go back to the mid–1960s when Appellant Lindy Pen Company [1] (Lindy) and Appellee Bic Pen Corporation (Bic) were competitors in the production and manufacture of ball point pens. Each marketed a fine-point tip for use by accountants and auditors. In 1965, before Lindy's trademark was perfected and registration issued, Bic used the mark "Auditor's" on its pen barrels. Lindy contacted Bic, making a claim to the mark, and Bic voluntarily agreed to stop using it. On September 20, 1966, United States Trademark Registration No. 815,488 was issued to Lindy for the word "Auditor's." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 550 F.Supp. 1056, 1059 (C.D.Cal.1982). Lindy perfected the registration by filing the appropriate documents pursuant to federal statute. *Id.*

Fourteen years later, Bic adopted the legend "Auditor's Fine Point" to describe a certain pen model. Prior to this use, Bic researched the term "Auditor's" and found that at least three other manufacturers employed a variation of the word "Auditor's" in their marketing materials. This investigation revealed that Lindy also used the term, but that Lindy exerted no proprietary interest over it in its advertising.

Lindy learned of Bic's renewed use of the mark and filed suit in 1980 alleging trademark infringement, unfair competition, breach of contract, and trademark dilution. The district court entered judgment in favor of Bic on all claims. The circuit court upheld the district court's ruling that Bic did not infringe in the major retail markets, but remanded the case to determine whether there was a likelihood of confusion in telephone order sales. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240 (9th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985) (*Lindy I*). The court specifically found that "there is no evidence of actual confusion [and] that Bic adopted the designation

---

* Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation.

1. In 1981, Lindy sold its assets, including its trademark rights, to Blackfeet Plastics, Inc. Appellants will be referred to in the singular as Lindy throughout the text.

'Auditor's fine point' without intent to capitalize on Lindy's goodwill...." *Id.* at 1246.

Upon remand, the district court determined that there was a likelihood of confusion in the telephone order market because the purchaser did not have the opportunity to view the pens at the time of purchase. The court went on to find, however, that the confusion could be cured upon receipt of the goods because the purchaser could return the product. The circuit court again disagreed and found that Lindy had established a likelihood of confusion in the telephone order market which post-sale inspection could not cure. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 796 F.2d 254 (9th Cir.1986) (*Lindy II*). In words which now comprise the nub of the current appeal, this court ordered that the case be remanded to district court "with instructions to enter an order enjoining Bic from using the word 'Auditor's' on or in connection with its pens. We additionally instruct the district court to order an accounting and to award damages and other relief as appropriate." *Id.*

The district court thereafter issued an injunction and permitted the parties to conduct discovery regarding damages and profits. The court ordered the parties to submit briefs addressing four specific points directed at the damages claim. After reviewing the parties' briefs and exhibits, the court held that an accounting of profits was inappropriate because Bic's infringement was innocent and accomplished without intent to capitalize on Lindy's trade name. The court also found that an award of damages was inappropriate because Lindy had failed to establish the amount of damages. The court granted Lindy the opportunity to resubmit written argument on damages, but found that Lindy once again failed to sustain its burden of proof.

The parties now argue, on appeal and cross-appeal, that the remand determination regarding damages is in error. A determination of damages is left to the sound discretion of the trial court. In the instant case, there has been no abuse of discretion; therefore, the judgment is affirmed.

## INTERPRETATION OF LINDY II

The threshold question of this appeal is whether the language of *Lindy II* entitled Lindy to an accounting and monetary damages upon remand. Lindy maintains that the district court had no choice but to order an accounting pursuant to this court's mandate. Undeniably, the decision of the circuit court in a prior appeal must be followed in all subsequent proceedings in the same case under the law of the case doctrine. *Eichman v. Fotomat Corp*, 880 F.2d 149, 157 (9th Cir.1989). The law of the case controls unless evidence on remand is substantially different from that presented in previous proceedings. *Waggoner v. Dallaire*, 767 F.2d 589, 593 (9th Cir.1985), *cert. denied*, 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986). An order issued after remand may deviate from the mandate, however, if it is not counter to the spirit of the circuit court's decision. *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1563 (Fed.Cir.1987). The district court must be given a meaningful opportunity to follow the directive of the circuit court in resolving the issues. *Portsmouth Square. Inc. v. Shareholders Protective Committee*, 770 F.2d 866, 872 (9th Cir.1985). The district court should not be reversed for failing to follow a mandate if its decision is within the scope of the remand. *Little v. United States*, 794 F.2d 484, 488 (9th Cir.1986).

We find that the district court established Lindy's damages upon remand in accordance with the mandate of *Lindy II*. We base this decision upon a thorough reading of the decision as a whole which quite clearly remanded the action for a "determination of damages." *Lindy II*, 796 F.2d at 255. We also draw support for this interpretation from case law that holds that a determination of damages in a trademark infringement action, including an accounting, is to be pursued in light of equitable considerations. *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th Cir.), *cert. denied*, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968). "The equitable limitation upon the granting of

of monetary awards ... would seem to make it clear that such a remedy should not be granted as a matter of right." *Id. See also Burger King Corp. v. Mason,* 855 F.2d 779, 780 (11th Cir.1988). When fashioning a remedy in a given case, the court must rely "not merely on the legal conclusion of liability, but [must] also ... consider the nature of the infringing actions, including the intent with which they were motivated and the actuality, if any, of their adverse effects upon the aggrieved party." *Bandag, Inc. v. Al Bolser's Tire Stores,* 750 F.2d 903, 918 (Fed.Cir.1984) (applying Ninth Circuit law). *See also Highway Cruisers of California, Inc. v. Security Industries, Inc.,* 374 F.2d 875, 876 (9th Cir.1967) ("One may get just enough relief to stop the evil....").

The district court adhered to the spirit of *Lindy II* and the dictates of controlling precedent by proceeding with additional discovery and argument prior to ordering an accounting of Bic's profits. The district court ultimately determined that an accounting was not appropriate under the circumstances of this case and its decision will therefore be reviewed for an abuse of discretion. "There is an abuse of discretion when a judge's decision is based on an erroneous conclusion of law or when the record contains no evidence on which [s]he rationally could have based that decision." *Petition of Hill,* 775 F.2d 1037, 1040 (9th Cir.1985).

## ACCOUNTING OF PROFITS

Following the damages proceeding, the district court held that an accounting of profits was inappropriate because Bic's in-

fringement was innocent and accomplished without intent to capitalize on Lindy's trade name. Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), governs the award of monetary remedies in trademark infringement cases and provides for an award of defendant's profits, any damages sustained by the plaintiff, and the costs of the action.[2]

The Supreme Court has indicated that an accounting of profits follows as a matter of course after infringement is found by a competitor. *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 259, 36 S.Ct. 269, 271, 60 L.Ed. 629, 634 (1916). Nonetheless, an accounting of profits is not automatic and must be granted in light of equitable considerations. *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 131, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386, 1391 (1947). Where trademark infringement is deliberate and willful, this court has found that a remedy no greater than an injunction "slights" the public. *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272, 1274 (9th Cir.1982). This standard applies, however, only in those cases where the infringement is "willfully calculated to exploit the advantage of an established mark." *Id.* The intent of the infringer is relevant evidence on the issue of awarding profits and damages and the amount. *Maier Brewing Co.,* 390 F.2d at 123. When awarding profits, the court is cautioned that the "Plaintiff is not ... entitled to a windfall." *Bandag, Inc.,* 750 F.2d at 918.

Lindy posits that Bic's actions require an accounting as a remedy for willful infringement.[3] The parties agree that as early as

**2.** Section 1117(a) provides that a trademark registrant shall be entitled, upon the finding of an infringement and subject to the principles of equity, to recover:

(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the

case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

**3.** Intentional infringement is not at issue as the district court's initial conclusion that Bic's in-

1965, Bic had knowledge of Lindy's claim to trademark rights in the term "Auditor's" when Bic published a catalog advertising pens with the mark stamped on their barrels. Bic voluntarily suspended use of the mark after Lindy informed Bic of its claim to the term. Fourteen years after this exchange, Bic began using the legend "Auditor's Fine Point" on its extra-fine point pens, the subject of the current litigation.

▇▇▇ Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as "deliberate," "false," "misleading," or "fraudulent" to conduct that meets this standard. *Bandag, Inc.*, 750 F.2d at 918–19; *National Lead Company v. Wolfe*, 223 F.2d 195, 203 (9th Cir.1955), *cert. denied*, 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. 778 (1955). Cases outside this jurisdiction offer additional guidance. For instance, the Circuit for the District of Columbia equates willful infringement with bad faith. *Reader's Digest Association, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 807 (D.C.Cir.1987). Willfulness and bad faith "require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 966 (D.C.Cir.1990) (court reversed trial court's finding that false advertising violation of Lanham Act was willful or in bad faith). The Sixth Circuit has stated that a knowing use in the belief that there is no confusion is not bad faith. *Nalpac, Ltd. v. Corning Glass Works*, 784 F.2d 752, 755 (6th Cir.1986) (accounting of profits properly denied where there was no deliberate intent to cause confusion). *See also W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970) (affirming finding of willfulness based on evidence that defendant tried to buy out trademark holder prior to infringement). Indeed, this court has cautioned that an accounting is proper only where the defendant is "at-

tempting to gain the value of an established name of another." *Maier Brewing Co.*, 390 F.2d at 123.

▇▇▇ The present case simply does not involve *willful infringement*. Evidence taken at the damages proceeding shows that Lindy in general, and its Auditor's line in particular, was experiencing an overall business decline. The trial court also found that any knowledge that Bic may have had of Lindy's mark stemming from the 1965 interchange was conducted by outside counsel, thereby implying that Bic's knowledge of Lindy's interest was attenuated at best. *Lindy Pen*, 550 F.Supp. at 1059. The district court also determined that Lindy's mark was weak and that there was no evidence of actual confusion. *Id.* at 1058–60. Based on these facts, it was reasonable for the district court to conclude that Bic's actions were not "willfully calculated to exploit the advantage of an established mark," *Bandag, Inc.*, 750 F.2d at 921, and that Bic's conduct did not rise to the level of willfulness which would have mandated an award.[4]

This circuit has announced a deterrence policy in response to trademark infringement and will grant an accounting of profits in those cases where infringement yields financial rewards. *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir.1982) (plaintiff damaged through defendant's intentional use of counterfeit product labels). However, the policy considerations which clearly justified an award in *Playboy Enterprises* are not present in this case. Unlike the *Playboy Enterprises* plaintiff, Lindy's trademark was weak and Bic's infringement was unintentional. Moreover, Bic's major position in the pen industry makes it clear that it was not trading on Lindy's relatively obscure name. Accordingly, the policy considerations announced by *Playboy Enterprises* would be trivialized by insisting on an accounting in this case. *See*

fringement was not intentional is law of the case and cannot be disturbed.

**4.** Even assuming that Bic could be termed a willful infringer, "[w]illful infringement may

support an award of profits to the plaintiff, but does not require one." *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 429 (9th Cir.1979) (citing *Maier Brewing Co.*, 390 F.2d at 121).

*ALPO Petfoods Inc.*, 913 F.2d at 969 ("deterrence is too weak and too easily invoked a justification for the severe and often cumbersome remedy of a profits award...."). To award profits in this situation would amount to a punishment in violation of the Lanham Act which clearly stipulates that a remedy "shall constitute compensation not a penalty." 15 U.S.C. § 1117(a).

### AWARD OF DAMAGES

 15 U.S.C. § 1117(a) further provides for an award, subject to equitable principles, of "any damages sustained by the plaintiff...." A plaintiff must prove both the fact and the amount of damage. 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984). Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement. *Id.* at 509. Because proof of actual damage is often difficult, a court may award damages based on defendant's profits on the theory of unjust enrichment. *Id.* at 511. *See also Bandag, Inc.*, 750 F.2d at 918.

The district court gave Lindy the opportunity to prove its damages under both methods: actual damages in the form of its lost profits, or if that proved too difficult, through proof of Bic's unjust enrichment in the form of Bic's profits. The damages proceeding was conducted through written pleadings.[5] Based on the initial submissions, the judge held that although Lindy had established the fact of damage, it had not proven the amount of damage. How-

ever, the court directed further briefing subject to detailed instructions.[6]

 After final briefing, the court concluded that Lindy had failed to show any actual damage because it did not put forth sufficient proof of its lost profits. To establish damages under the lost profits method, a plaintiff must make a "prima facie showing of reasonably forecast profits." 2 J.T. McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984). The court found Lindy's calculations to be irreparably flawed because Lindy did not isolate its own telephone order sales from total pen sales. Consequently, Lindy's calculations contained items in which no likelihood of confusion existed and therefore were inappropriately included. The district court reasoned that it had no rational basis upon which to estimate an award as to the infringing items and accordingly denied Lindy's request.

 Trademark remedies are guided by tort law principles. *Id.* at 509 ("Plaintiff's damages should be measured by the tort standard under which the infringer-tortfeasor is liable for all injuries caused to plaintiff by the wrongful act...."). As a general rule, damages which result from a tort must be established with reasonable certainty. Dan B. Dobbs, Remedies § 3.3, at 151 (1973). The Supreme Court has held that "[d]amages are not rendered uncertain because they cannot be calculated with absolute exactness," yet, a reasonable basis for computation must exist. *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71

---

5. The court ordered the parties to file written position statements on the following issues:

(1) The amount of telephone order sales of Bic pens. The parties should address the propriety and feasibility of a breakdown of sales based on orders requesting pens by manufacturer's name, model number and "AUDITOR'S."

(2) Lindy's sales of its "AUDITOR'S" line before and during the period at issue.

(3) Lindy's total attorneys' fees incurred in prosecuting this action and those attributable to the theory on which it has prevailed. The statement of attorneys' fees should include a brief description of the services rendered, the

attorney who performed them, that attorney's applicable billing rate, the date rendered, and the time billed to the tenth of an hour.

(4) Any equitable factors for the Court to consider under § 1117(a).

6. The court found Lindy's initial submission to be defective because Lindy did not attempt to isolate the telephone order submarket of pens, its proposed pre-infringement period inappropriately excluded a period of loss and contained an explicable gap in the period, and because Lindy used different infringement periods depending on whether it was calculating lost sales or lost profits.

L.Ed. 684, 691 (1927). Many courts have denied a monetary award in infringement cases when damages are remote and speculative. *See generally Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 642 (D.C.Cir.1982) ("any award based on plaintiff's damages requires some showing of actual loss"); *Burndy Corp. v. Teledyne Industries, Inc.,* 584 F.Supp. 656, 664 (D.C.Conn.) ("no assessment of damages is authorized if it is not based on actually proven damages."), *aff'd* 748 F.2d 767 (2d Cir.1984); *Invicta Plastics (USA) Ltd. v. Mego Corp.,* 523 F.Supp. 619, 624 (S.D.N.Y.1981) ("damages will not be awarded in the absence of credible evidence demonstrating injury to the plaintiff from defendant's sales."); *Vuitton et Fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1077 (S.D.N.Y.1979) ("The discretionary award of either damages or profits assumes an evidentiary basis on which to rest such an award. Without such a basis there can be no recovery."), *aff'd mem.,* 622 F.2d 577 (2d Cir.1980).

■■■■ Lindy produced evidence of its total pen sales, as available,[7] for the designated time period. Although it divided its sales into total sales and specific sales of Auditor's, it failed to further subdivide its data into the category of telephone order sales. Lindy was in the best position to identify its own sales, but declined to provide the court with any evidence of its loss caused by Bic's wrong doing. Although Lindy offers excuses for this deficiency, its explanations do not negate the fact that Lindy never furnished the court any reasonable estimate of its own sales.[8] It would have been error for the district court to select an arbitrary percentage of total sales to represent the more narrow submarket of telephone sales. The court was correct, therefore, in finding that Lindy

failed to sustain its burden of proving reasonably forecast profits.

■■■■ Lindy also sought an accounting of Bic's profits based on a theory of unjust enrichment. Lindy assesses as error the district court's requirement that Lindy separate Bic's telephone order sales from total sales of goods. Lindy maintains that this requirement had the effect of shifting the burden of proving infringing sales from the infringer to the trademark holder. However, an accounting is intended to award profits only on sales that are attributable to the infringing conduct. The plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 206–07, 62 S.Ct. 1022, 1024–25, 86 L.Ed. 1381, 1385–86 (1942). The defendant thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead. 15 U.S.C. 1117(a).

■■■■ Lindy failed to come forward with any evidence of sales of the Bic "Auditor's Fine Point" in the infringing market. Lindy instead brought forth proof of Bic's total sales. Lindy averred to the court that a division of Bic's sales into the telephone submarket "is impossible from Bic's records since Bic never separated its pens according to telephone sales...." To the contrary, Lindy had access through discovery to Bic's records from which a reasonable estimate could have been accomplished.[9]

We find that Lindy's appeal on the question of actual damages fails due to a lack

---

**7.** Lindy admitted that it did not have records or complete records from which to calculate the lost sales for the entire period.

**8.** Lindy devotes much of its argument to the fact that the district court incorrectly set the pre-infringement and infringement time periods. Regardless of the merits of Lindy's position, this contention is essentially irrelevant to the dispositive issue of whether Lindy was able

to provide the court with evidence of its sales in the infringing market.

**9.** Bic offers in the alternative that its cost and deduction evidence shows that Bic made no profits on its "Auditor's Fine Point" pens. Because we find that Lindy failed to make a prima facie showing of Bic's unjust enrichment, we need not reach this argument.

of proof at the damages proceeding. The district court followed the directive of this court when it offered Lindy the opportunity to establish damages. Lindy was unable or unwilling to present competent evidence of its lost profits or Bic's unjust enrichment arising from the infringement. We affirm the trial court on this point.

## AWARD OF TREBLE DAMAGES AND ATTORNEYS' FEES

In addition to challenging the district court's decision under 15 U.S.C. § 1117(a), Lindy attacks the court's refusal to award damages pursuant to the provisions of 15 U.S.C. § 1117(b).[10] Section 1117(b) mandates an award of treble damages and attorneys' fees in the case of an intentional infringement "unless the court finds extenuating circumstances." 15 U.S.C. § 1117(b). The district court specifically found and concluded that "[t]he record taken as a whole does not support a finding that the defendant's conduct or mark falls within the scope" of the subsection. The court ordered that the damages phase of the trial be conducted solely under the provisions of § 1117(a) which require a showing of exceptional circumstances as a precondition to an award of attorneys' fees.

 Lindy doggedly maintains that the prerequisites of § 1117(b) are met and the court's contrary determination is clear error. Notwithstanding Lindy's protestations, the elements required to support an award are not present here. The Ninth Circuit expressly determined in both prior appeals that Bic's infringement was not intentional. *Lindy II*, 796 F.2d at 257; *Lindy I*, 725 F.2d at 1246. Bic's admission that it had knowledge of Lindy's claim to trademark rights in the term "Auditor's" in 1965 does not now refute the settled law of the case that Bic did not intentionally infringe upon Lindy's trademark. *See generally Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472 (11th Cir.1991)

(a plaintiff must prove an intent to infringe beyond that required to establish a violation of federal law or to obtain federal statutory remedies).

 Even assuming this court were somehow to find that Bic demonstrated the requisite intent, an award under § 1117(b) is never automatic and may be limited by equitable considerations. The statute specifically states that the district court may refrain from imposing the mandatory sanctions of § 1117(b) upon a finding of extenuating circumstances. Although the district court did not make a finding on this point other than to note that the record as a whole did not justify an award under § 1117(b), extenuating circumstances may be inferred. Some of the factors the court found persuasive were that Bic was "unaware of Lindy's registered trademark" and that "[a]ll references to the earlier correspondence between Bic and Lindy were held by outside counsel and were unknown to in-house counsel." 550 F.Supp. at 1059.

 Nor can we agree that the district court's refusal to award attorneys' fees pursuant to § 1117(a) was in error. While the term "exceptional" is not defined in the statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir.1984). *See also Playboy Enterprises*, 692 F.2d at 1276 (failure to award attorneys' fees was abuse of discretion where defendant "deliberately arranged to obtain counterfeit goods and to sell such goods as genuine PEI products."). An award is within the discretion of the trial court and will not be disturbed absent abuse of that discretion. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1026 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778

---

**10.** 15 U.S.C. § 1117(b) provides in part that "[i]n assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation ... that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark ... in connection with the sale, offering for sale, or distribution of goods or services."

(1986). Other than its longevity, there is nothing exceptional about this case. We therefore find that the trial court did not abuse its discretion in ruling that there are no exceptional circumstances requiring an award of Lindy's attorneys' fees.

## STATE INFRINGEMENT CLAIM

Lindy claims that it is entitled to damages under state trademark law and the district court's refusal to award statutory remedies should be reversed. In its original complaint, Lindy alleged a cause of action for common law unfair competition. At the second remand, Lindy sought damages pursuant to Cal.Bus. & Prof.Code § 14340. After ordering rebriefing with regard to "Lindy's pendent claims based on the alleged California registration of a trademark," the district court found that Lindy had failed to plead and prove state registration at the liability phase of the proceeding and was therefore limited in its recovery to common law remedies.

Lindy objects, arguing that it need only establish a common law violation in order to collect under the California code. Lindy maintains that § 14340 merely complements its common law cause of action by providing a measure of damages. Lindy cites California case law holding that "registration is not a required condition to establish a protectable proprietary interest under common law rules." *North Carolina Dairy Foundation, Inc. v. Foremost–McKesson, Inc.*, 92 Cal.App.3d 98, 106–07, 154 Cal.Rptr. 794, 798–799 (1979).

Whether state registration is required to establish a prima facie case of statutory infringement is irrelevant. The district court ruled on the precise issue of whether Lindy had ever alleged a state cause of action; the court did not engage in an interpretation of state law. We thus review *de novo* the district court's dismissal of this claim for insufficient pleading. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir.1989). In so reviewing we find that

Lindy's alleged California state registration was not a part of the record of this case and the court ruling prohibiting introduction of proof of state registration was correct. Although Lindy did present a claim for common law unfair competition in its complaint, Lindy failed to assert any allegations of state trademark registration. This error was not overcome by the evidence Lindy produced at rebriefing. The district court concluded that the exhibit Lindy submitted "did not establish plaintiffs' mark ... [T]he alleged certificate of registration is hearsay and is not the best evidence of the contents of any certificate of registration." We thus affirm the district court.

## BIC PEN'S CROSS APPEAL

Bic contends by way of cross-appeal that the district court's finding that Lindy had established the fact of damages was in error. Lindy offered the testimony of a wholesale office supply distributor who testified that in the course of his business, he would "switch" a Bic pen for a Lindy in customer orders.[11] Bic counters that this testimony is incredible because it is both hypothetical and speculative. Bic maintains that throughout a decade of litigation in this matter, Lindy has failed to provide the court with the requisite evidence of actual consumer confusion. Bic does not challenge the court's finding of likelihood of confusion, but maintains that evidence of actual confusion is necessary in order for Lindy to recover damages. The district court found, and this court affirmed, that there has been no showing of actual confusion between the competing products.

Other jurisdictions have made a distinction between the elements necessary to establish a legal basis for liability from those required for proof of damages. *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir.1987). Although we recognize this distinction, "[n]evertheless,

---

11. The witness testified to the following:
 Q: Have you ever while—have you ever switched a customer over from a Lindy pen which he asked for to a Bic pen?
 A: Yes, I have.
 Q: Have you ever switched him from the Lindy Auditor's to the Bic Auditor's pen?
 A: Yes.

an inability to show actual damages does not alone preclude a recovery under section 1117." *Bandag, Inc.*, 750 F.2d at 919. In so holding, we express a distinct preference for those opinions permitting relief based on the totality of the circumstances. *See Burger King Corp.*, 855 F.2d at 781 (plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits); *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266 (2nd Cir.1987) (consumer deception, as opposed to consumer confusion, is sufficient to state a claim for damages); *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir.1978) ("Deceptive advertising or merchandising statements may be judged in various ways. If a statement is actually false, relief can be granted on the court's own findings without reference to the reaction of the buyer or consumer of the product."). Here, Lindy's evidence that at least one wholesale distributor engaged in switching its product is credible proof of the fact of damage.

 As its second point of appeal, Bic seeks a ruling specifying that injunctive relief is the sole appropriate remedy in this case. Although the use of an injunction as a sole remedy would not be an abuse of the district court's discretion, and indeed reflects the actual result in this case, it is not mandated as a matter of law. The district court is granted broad discretion within which to fashion a remedy for a violation of federal trademark law. *Maier Brewing Co.*, 390 F.2d at 121. An injunction alone may fully satisfy the equities of a case, particularly in the absence of a showing of wrongful intent. *Id.* at 124. Bic cites the court to numerous cases where an injunction alone has been held to be sufficient relief; however, none of these cases advance a rule requiring injunctive relief as a sole and exclusive remedy. We will refrain from formulating such a rule here.

### CONCLUSION

The district court's order complies with the Ninth Circuit's previous mandate. We find that the district court did not abuse its discretion in denying Lindy an accounting of profits and award of damages. We also hold that the elements necessary for a grant of treble damages and attorneys' fees are not present in this case. We affirm the district court's denial of Lindy's untimely state infringement claim. Bic's cross-appeal is denied in its entirety.

Accordingly, the decision of the district court is AFFIRMED and Bic's cross-appeal is DENIED.