97 F.3d 1460
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SENGOKU WORKS LTD., a corporation,
Plaintiff-counter-defendant Appellee/Cross-Appellant,
v.
RMC INTERNATIONAL, LTD., a corporation; Michael Resmo;
Joseph Malaga, Defendants-counter-plaintiffs
Appellants/Cross-Appellees.
 Nos. 95-55990, 95-56087.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 7, 1996.
Decided Sept. 20, 1996.
 
 Before: REINHARDT, HALL, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 RMC International Ltd., and its officers Michael Resmo and Joseph Malaga, appeal the district court's judgment, following a jury trial, in favor of Sengoku Works Ltd. for trademark and trade dress infringement under the Lanham Act, 15 U.S.C. §§ 1051-1127, and breach of contract under California law. RMC had served since 1985 as exclusive United States distributor of kerosene heaters manufactured by Sengoku, a Japanese corporation, and these charges arose in connection with RMC's decision to market kerosene heaters manufactured by Wooshin, a Korean corporation.
 
 
 3
 * Sengoku sued RMC for breach of contract, claiming that there was a valid written contract whereby RMC agreed to act as Sengoku's exclusive U.S. distributor in 1994. RMC argues that there never was a signed written contract for 1994, and therefore, Sengoku's contract claim is barred by the Statute of Frauds. The real question, however, is whether a contractual agreement was ever reached by the parties.
 
 
 4
 Under the California Commercial Code, the parties may form a contract after reaching accord even though the terms of the offer and acceptance do not perfectly mirror one another, unless the offeree expressly conditioned his acceptance on the offeror's assent to the additional terms. Cal.Comm.Code § 2207; see Steiner v. Mobil Oil Corp., 141 Cal.Rptr. 157, 163-64 (Cal.1977) (noting that "section 2207 looks to the actual dealings of the parties," and "inquires as to whether the parties intended to complete an agreement.").
 
 
 5
 Sengoku sent a letter to RMC setting forth the basic terms of a proposed 1994 agreement, which included an exclusivity provision as in prior contracts and indicated the price terms for the year. The letter also stated: "If RMC accept his [sic] way of business then Sengoku will ship the heaters for 1994 season to RMC thru Zenith" and "When RMC accept and work with these prices, Sengoku will give exclusivity for 1994 to RMC to sell to North America."
 
 
 6
 RMC's response opened with, "In the spirit of cooperation, I accept your latest proposal." The letter also proposed a modified price arrangement: "In view of the above, I now ask you to demonstrate the spirit of your cooperation by changing our price schedule where all purchases for the entire season would be at one price." Finally, the letter assured Sengoku that RMC intended to continue their relationship: "We have worked together successfully for many years and it is our desire to continue this relationship for many years to come and prosper together." The letter closed with "I hope you will give my request your best effort and acknowledge positively your decision as soon as possible so that we may proceed accordingly."
 
 
 7
 We conclude that these letters do not represent a valid offer and acceptance. The closing of RMC's letter indicates that RMC would not proceed without Sengoku's acceptance of RMC's price terms. Furthermore, Sengoku points out that RMC's requested price arrangement was quite different than the parties' past agreements, "which traditionally reserved price issues for review on a 'case by case' basis, depending upon the retailer placing the order." Given that RMC's price term represented a departure from the parties' prior course of dealings, it seems unlikely that RMC intended to be bound to other terms of the proposed contract without Sengoku's concession to the new price term. Thus, we find that RMC's acceptance was expressly conditioned upon Sengoku agreeing to the new price term. As a result, RMC's letter can be considered at most a counter-offer that required Sengoku's acceptance before creating a binding contract. The record indicates that price negotiations continued between these parties, and no accord was reached. Thus, there was no contract for 1994, and accordingly, no breach.
 
 II
 
 8
 The jury found for Sengoku on its claim that RMC infringed the trade dress of Sengoku's heaters, by distributing Wooshin-manufactured heaters confusingly similar to Sengoku's. RMC appeals that verdict on the basis that it is not supported by substantial evidence. We disagree, and affirm the verdict for Sengoku on this issue.[1]
 
 
 9
 "Trade dress" encompasses the total look of a product, including the product's packaging or labeling, and its shape or design. International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir.1993); Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 613 (9th Cir.1989); Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1506 (9th Cir.1987); Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 841 (9th Cir.1987). If a seller adopts a trade dress that is confusingly similar to a competitor's, then that is actionable as unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). International Jensen, 4 F.3d at 822; Vision Sports, 888 F.2d at 613. A successful claim of trade dress infringement requires the plaintiff to prove that: (1) the trade dress is inherently distinctive, or that it has acquired distinctiveness through secondary meaning; (2) there is a likelihood of confusion by the consuming public; and (3) the trade dress is nonfunctional. Two Pesos, Inc. v. Taco Cabana, Inc., 112 S.Ct. 2753, 2758 (1992); International Jensen, 4 F.3d at 823; First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1381 (9th Cir.1987).
 
 
 10
 In its complaint, Sengoku defined its trade dress as "the overall shape of the product, positioning of the instrumentation, lettering, model number designations, pattern of the graphic design, and color combination."
 
 
 11
 RMC argues that Sengoku did not present sufficient evidence to support a jury verdict on the issues of secondary meaning, confusion, and functionality.[2] A jury verdict on each of these issues will be upheld if it is supported by substantial evidence, which is sufficient relevant evidence for reasonable minds to accept as adequate to support the jury's conclusion. Murray v. Laborers Union Local No. 324, 55 F.3d 1445, 1452 (9th Cir.1995); see also Vision Sports, 888 F.2d at 614; Fuddruckers, 826 F.2d at 843 Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1355 (9th Cir.1985) (en banc).
 
 
 12
 (1) Secondary meaning
 
 
 13
 We have enumerated several factors to consider when determining secondary meaning: whether actual purchasers associate the trade dress with plaintiff's products, the degree and manner of plaintiff's use of the trade dress, and whether plaintiff's use of the trade dress has been exclusive. Vision Sports, 888 F.2d at 615; Levi Strauss, 778 F.2d at 1358. In addition, proof of intentional copying by the alleged infringer supports an inference of secondary meaning. Vision Sports, 888 F.2d at 615; Fuddruckers, 826 F.2d at 844; Transgo, Inc. v. AJAC Transmission Parts Corp., 768 F.2d 1001, 1016 (9th Cir.1985) ("Proof of exact copying, without any opposing proof, can be sufficient to establish secondary meaning"), cert. denied, 474 U.S. 1059 (1986).
 
 
 14
 Sengoku presented evidence that representatives of Sengoku's current United States distributor, Cans Unlimited, associate the design of Sengoku-manufactured heaters with Sengoku, regardless of the trademark affixed to the product. They also testified that they can distinguish between the heaters of all four manufacturers in the U.S. market by their shape, except that the infringing Wooshin heaters quite closely resemble Sengoku's.
 
 
 15
 Primarily, Sengoku relies on evidence that RMC directly copied its heater design. Sengoku presented testimony that RMC sent Sengoku heaters to Wooshin, presumably to allow Wooshin to copy them. Moreover, the design of the Wooshin Keroheat heaters looks almost identical to that of Sengoku, including the use of the "Keroheat" mark. The Wooshin Dyna-Glo heater is also quite similar, albeit with a different trademark. Although copying does not always lead to an inference of secondary meaning, in this case, RMC seems to have been intent upon trading on the goodwill developed by the Sengoku heaters.
 
 
 16
 Given that others do attribute the source of this trade dress to Sengoku, and the evidence that RMC so closely copied Sengoku's design, we find that there is substantial evidence supporting the jury's finding of secondary meaning.
 
 
 17
 (2) Likelihood of Confusion
 
 
 18
 For claims under Lanham Act § 43(a), 15 U.S.C. § 1125(a), "[a] likelihood of confusion exists when consumers 'are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques.' " International Jensen, 4 F.3d at 825 (quoting Metro Publishing, Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir.1993)).
 
 
 19
 The Ninth Circuit usually applies an eight-factor test to evaluate likelihood of confusion. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir.1979); Vision Sports, 888 F.2d at 616. When the allegedly infringing product competes directly with the trademark owner's product, the likelihood of confusion is found more readily, and generally depends upon whether the products' marks are confusingly similar, without consideration of all the factors. Lindy Pen Co., Inc. v. Bic Pen Corp., 796 F.2d 254, 255 (9th Cir.1986); Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1391 (9th Cir.1993) ("The eight factor test applies when the products are related but not in direct competition."); AMF, 599 F.2d at 348.
 
 
 20
 In this case, a visual comparison of the products does suggest a confusing similarity. The layout of all the product components are nearly identical, and the original Wooshin heaters also bore the Keroheat trademark. The determination of likelihood of confusion is "predominantly factual in nature," Levi Strauss, 778 F.2d at 1355-56 & n. 5, and is therefore better left to the jury. Upon comparing the various heaters the jury determined that they were confusingly similar. Therefore, we affirm the jury's finding of likelihood of confusion.
 
 
 21
 (3) Non-Functionality
 
 
 22
 Trademark and trade dress protection does not extend to product features that are purely functional. A trade dress is functional if it is essential to the product's use or purpose or if it affects the product's cost or quality. International Jensen, 4 F.3d at 823; Rachel, 831 F.2d at 1506; Fuddruckers, 826 F.2d at 842. In other words, if exclusive use of the product's feature "would put competitors at a significant non-reputation-related disadvantage," then the feature is functional. Qualitex Co. v. Jacobson Products Co., 115 S.Ct. 1300, 1304 (1995). The existence of an adequate number of feasible alternative designs is a significant factor in determining whether competitors will still be able to compete effectively. Clamp Mfg. Co. v. Encon Mfg. Co., 870 F.2d 512, 516 (9th Cir.1989); Wallace International Silversmith v. Godinger Silver Art, 916 F.2d 76 (2d Cir.1990), cert. denied, 111 S.Ct. 1622 (1991); In re Lincoln Diagnostics, Inc., 30 U.S.P.Q.2d 1817, 1824-25 (TTAB 1994) (noting that the existence of seven hypothetical alternative designs is a very limited number, and would "seriously interfere with the fundamental right to compete"). When determining functionality, the product's trade dress must be considered as a whole, First Brands, 809 F.2d at 1381, and "functional elements that are separately unprotectable can be protected together as part of a trade dress." Fuddruckers, 826 F.2d at 842.
 
 
 23
 Sengoku admits that the features it seeks to protect are functional, but it argues that the combination of features is nonfunctional. Most of its evidence on this issue relates to the availability of alternative designs. Sengoku introduced catalog pages showing several different kerosene heaters. Upon comparing all the various heater designs depicted in the record, we conclude that there is a limited number of basic configurations. Furthermore, several companies market similar products already (or have in the past). Thus, awarding trade dress protection for Sengoku's basic design--a rectangular heater, with a partial grill and the removable cartridge tank on the right--could seriously impede competition.
 
 
 24
 Nevertheless, Sengoku has not claimed protection of merely its basic design, but has instead defined in detail the combination and arrangement of features it seeks to protect. Sengoku seeks to protect every aspect of its trade dress, including the arrangement and color of the knobs, switches and controls, the shape and color of the heater and each of its components, and the look and configuration of the labeling. Although many of these features are functional, we find that Sengoku has adequately proved that its trade dress, when taken as a whole, is not functional. Contrary to RMC's claims, another manufacturer may still produce a rectangular shaped heater with a partial grill offset to the right--but in doing so, it may not copy every detail of Sengoku's trade dress.
 
 
 25
 RMC also objects to the district court's formulation of the jury instruction on functionality. However, RMC did not object below to this instruction, as required by Fed.R.Civ.P. 51,[3] and as a result has waived its right to raise the issue on appeal.
 
 III
 
 26
 Finally, we reject RMC's argument that Sengoku should be judicially estopped from presenting its trademark claims.
 
 
 27
 Judicial estoppel preserves the integrity of the judicial process by preventing a party from obtaining relief on different occasions by asserting inconsistent positions. Yanez v. United States, 989 F.2d 323, 326 (9th Cir.1993). We conclude that judicial estoppel does not apply in this case because Sengoku has not asserted inconsistent positions in the two litigations. In the earlier case, Sengoku argued that it did not have sufficient minimum contacts with the State of Michigan, and did not purposefully avail itself of the laws of that state, because it does not directly market or sell its products in the United States. Sengoku did not hide the details of its distributorship agreement with RMC from the court, it simply noted that it sold its products to Zenith, the intermediary trading company, which then sold the products to RMC. This is not inconsistent with anything Sengoku has alleged in the current dispute. None of the evidence that RMC points to suggests a different conclusion. Therefore, Sengoku's trademark claims are not barred.
 
 IV
 
 28
 For the foregoing reasons, we hold as follows: The verdict on the breach of contract claims is not supported by substantial evidence, and is therefore REVERSED. The verdict for Sengoku on the trade dress infringement claim is AFFIRMED. In addition, the district court's award of attorneys' fees to Sengoku is AFFIRMED, insofar as those fees are based upon Sengoku's claims under the Lanham Act.
 
 
 29
 AFFIRMED in part, and REVERSED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 RMC also appealed the jury's verdict for Sengoku on a related trademark infringement claim. That issue is addressed in a separate published opinion, so we decide only the trade dress claim here
 
 
 [2]
 RMC also asserted an argument that the shape of Sengoku's heaters is in the public domain and thus, is not protectable as trade dress. As Sengoku correctly points out, RMC misapplied several seminal patent law cases to reach this conclusion, and we therefore reject this argument. See Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989); Sears Roebuck & Co. v. Stiffel, 376 U.S. 225 (1964); Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234 (1964)
 
 
 [3]
 Rule 51 provides, in relevant part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider the verdict, stating distinctly the matter objected to and the grounds of the objection."